UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMMA L. COUNTY, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-2241 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM & ORDER

Pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. #10), and Jo Anne B. Barnhart, Commissioner of the Social Security Administration's ("Commissioner"), Motion for Summary Judgment (Dkt. #15). After consideration of the motions, the entire record, and the applicable law, the Court is of the opinion that County's motion for summary judgment should be DENIED, and the Commissioner's motion should be GRANTED.

### Factual and Procedural Background

The Plaintiff, Amma L. County ("County"), filed this action pursuant to 42 U.S.C. § 405(g), for judicial review of an unfavorable decision by the Commissioner regarding her claim for Supplemental Security Income under Title XVI of the Social Security Act ("the Act").

County was born on May 9, 1962, and was 41 years old on the date of her second hearing before the Administrative Law Judge ("ALJ").[1] She has a high school education. County claims that she has been unable to work since September 16, 1994. Prior to the onset date of her alleged disability, County was employed as a nurse assistant, leg presser, and cashier checker.

---

[1] ALJ finds claimant is 43 years of age in his decision of July 22, 2003, however, claimant was actually 41, as the record indicates she was born May 9, 1962. *See* Tr. at 13, 67.

County first filed an application for Supplemental Security Income on September 16, 1994, alleging an inability to work beginning May 8, 1994, due to back impairment.  After a hearing in front of the ALJ Sherwin Biesman, on January 15, 1997, and supplemental hearings on July 17, 1997, and January 13, 1998, claimant was denied additional benefits on July 22, 1998.  At the hearings, County testified and was represented by counsel.

County appealed this decision, but the Appeals Council denied review on December 8, 1999.  County then filed her complaint in the United States District Court for the Southern District of Texas, and the Court remanded the case on September 14, 2000, for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  The Court remanded the case in order for the ALJ to consider additional evidence and obtain medical expert testimony.  The Appeals Council therefore vacated the July 22, 1998 ALJ decision, on May 3, 2002, and remanded the case to an ALJ for further proceedings.  The ALJ, Clifford Leinberger, held a supplemental hearing on May 14, 2004.  Claimant testified at the hearing and was represented by counsel.  Medical experts Drs. Vern O. Laing and Tiffany Green testified, as well as vocational expert Karen E. Nielsen, Ph.D.

At the hearing, County described her prior work experience, her back injury that precipitated her claim, as well as her present lifestyle.  County lives with her sister, drives herself to the store occasionally, and attends church.  In addition to back pain, County complained of swollen feet and carpal tunnel syndrome, and testified she has difficulty grasping items with her fingers and her hands cramp up.  County testified she is not receiving any mental treatment.

After reviewing the file and listening to the testimony, Dr. Laing, the first medical expert, testified regarding County's medical condition.  Laing stated that County does suffer from compression fracture in her spine, diabetes, obesity, symptoms of carpal tunnel, and, in his opinion, pain syndrome.  In Laing's opinion, although County's conditions are severe, they do not amount singly or in

combination to a listed impairment.  Laing testified County could function at a light level of physical activity, especially with potential treatment for carpal tunnel in the form of surgery, and could lift 10 pounds frequently, 20 pounds occasionally.  Even with surgery, her right hand use would be limited. Laing strongly contested the carpal tunnel diagnosis because the complaint showed up less than a year before the hearing, and therefore does not meet duration requirements of 12 months.  *See* 20 CFR 404.159; SSR 82-52.

The second medical expert, Dr. Green, after reviewing the files, testified primarily as to County's mental status.  Green based her information on a psychological evaluation (Tr. at 912) performed by Dr. J. L. Patterson in 2003, as part of her application process.  Green testified that Patterson diagnosed County with depressive disorder and borderline intellectual functioning.  In Green's opinion, neither diagnosis met or equaled the severity of a listed impairment, even though County's IQ was tested at 76.  Green downgraded County's ability to maintain attention and concentration, as well as her ability to function independently, from very good to fair.

Following Green, the vocational expert Nielsen testified as to County's past relevant work and potential for future employment.  Regarding County's past work experience, Nielsen characterized the positions of nurse assistant and cashier checker, as light in exertion and semi-skilled, and leg presser as light, unskilled.  The ALJ presented Nielsen with a hypothetical of an individual like County with like abilities and limitations and an ability to perform work at only a sedentary level of exertion, and Nielsen opined that the individual would not be able to perform County's past relevant work experience.  Nielsen opined that an individual with County's abilities and limitations, but with an ability to perform work at a light level of exertion would be able to perform the past relevant work as a leg presser and cashier, however, with limited use of one hand the individual would only be able to perform as a leg presser.  Based on the sedentary hypothetical, and the fact the individual has no

3

transferable skills, Nielsen suggested several jobs appropriate for claimant: information clerk, security surveillance monitor, and telephone clerk.

The ALJ subsequently denied County's request for Supplemental Security Income in his decision on July 22, 2003.  County timely sought review with the Appeals Council, that request was denied, and she appealed to this Court.  County and the Commissioner filed their motions for summary judgment on October 18, 2004, and December 2, 2004, respectively.

### Standard of Review and Applicable Law

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: 1) whether substantial record evidence supports the decision; and 2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n.2 (5th Cir. 1999)).

The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135.  In applying this standard, the court is to review the entire record, but the court may not re-weigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. *Brown*, 192 F.3d at 496.  Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979).  The

legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is capable of performing any "substantially gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1)     a claimant who is working, engaging in a substantially gainful activity, will not be found to be disabled no matter what the medical findings are;

(2)     a claimant will not be found to be disabled unless he has a "severe impairment;"

(3)     a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;

(4)     a claimant who is capable of performing work he has done in the past must be found "not disabled;" and

(5)     if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala,* 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that she is unable to engage in substantial gainful activity within the meaning of the Act.  *See Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)).  By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth.  *See Brown,* 192 F.3d at 498; *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  The analysis stops at any point in the five step process upon a finding that the claimant is or is not disabled.  *See*

*Greenspan,* 38 F.3d at 236.  If the ALJ finds the claimant "not disabled" at step five, the burden shifts

to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

### Discussion

In this case, the ALJ found that County did not engage in substantial gainful activity since the

alleged onset date and that County has obesity, diabetes, carpal tunnel syndrome, a depressive

disorder, and compression fractures in her spine. (Tr. at 408).  Although the ALJ states they are severe

because they result in more than a slight limitation for County, the ALJ found the combined

impairments do not meet or equal any medical listings contained in the listing of impairments in

Appendix 1 of the Regulations No. 4. *Id.*  The federal regulations provide that a claimant's RFC is the

measurement of her greatest capability to do work despite any limitations.  *See* 20 C.F.R. §§ 404.1545,

416.945.  At step five, the ALJ found that County has the RFC to

> perform sedentary work that does not involve repetitive use of the right dominant hand;
> she has an unlimited/very good ability (ability to function in this area is more than
> satisfactory) to use judgment, interact with supervisors, function independently,
> understand, remember and carry out simple job instructions, maintain personal
> appearance, and relate predictably in social situations; a good ability (ability to
> function in this area is limited but satisfactory) to follow work rules, relate to
> coworkers, deal with the public, maintain attention and concentration, understand,
> remember and carry out detailed job instructions, behave in an emotionally stable
> manner, and demonstrate reliability; and a fair ability (ability to function in this area
> is seriously limited but not precluded) to deal with work stress and understand,
> remember and carry out complex job instructions. (Tr. at 408).

The ALJ made the preceding assessment based on County's testimony, the testimony of the medical

experts, the vocational expert, and the complete record.  After determining County's RFC, the ALJ

concluded that although she could not perform past relevant work and has no transferable skills,

County could still perform at least three unskilled sedentary jobs as information clerk, security

surveillance monitor, and telephone clerk.  Thereafter, the ALJ determined, based in part on the

vocational expert's testimony, that there are approximately 40,000 jobs in the regional economy that

County could perform.

County requests judicial review of the ALJ's decision to deny Supplemental Security Income. County contends that the ALJ's decision fails to fully evaluate claimant's limitations. First, County argues that the ALJ failed to properly evaluate County's "massive" obesity and consider its impact on her ability to work. (Dkt, #11, 5). Second, County asserts that the ALJ failed to acknowledge County's "severe cognitive impairment" and consider its impact on her ability to work. (Dkt. #11, 7). The Court concludes that the ALJ sufficiently addressed County's obesity and cognitive impairment, and considered its impact on her ability to work in his evaluation.

The ALJ did not err in his decision by failing to properly evaluate County's obesity. The ALJ first notes there is no medical listing for obesity, and that County's obesity, whether alone or in combination with other impairments, does not meet or equal in severity any medical listing. (Tr. at 402). This finding is based on medical expert testimony from Dr. Laing, who also observed County's obesity "would be important in her diabetes," but still opined County could function at a light level of physical activity. (Tr. at 439). The ALJ also described claimant's height and weight over a period of eight years, showing her considerable weight problem. (Tr. at 406). Although the ALJ did not specifically mention County's Body Mass Index (BMI) in his findings, he was not required to do so by Social Security Rulings ("SSRs") 00-03p or 02-01p. The SSRs require the ALJ to take into consideration the new evidence, and this Court finds that the ALJ did so. The ALJ also calls into question the detriment caused by County's obesity. In particular, notes from doctors indicate that as late as February 1996, County was able to ride an exercise bike for 20 minutes, even though around that time she weighed over 250 pounds. (Tr. at 240, 180). Furthermore, instead of indicating County's physical limitations were caused by obesity, doctors more often cited carpal tunnel syndrome in her right hand, and pain syndrome in her back and feet.

Finally, the ALJ took obesity into consideration in the hypothetical he posed to the vocational expert.  He asked her to take into consideration someone who has the RFC to perform work "at the sedentary level of exertion, that is to lift five pounds frequently and 10 pounds occasionally, with mild to moderate pain discomfort." (Tr. at 455).  The sedentary level incorporates, among other physical limitations, the record of County's obesity. As a result, this Court finds the ALJ properly considered County's obesity when determining her functional capacity.

The ALJ did not err in failing to acknowledge County's cognitive impairment.  The vocational expert's evaluation and answer to the ALJ's hypothetical did include reference to County's mental capacity—ability to use judgment, understand, remember instructions.  The ALJ included in his hypothetical the factors mentioned by Dr. Green in her testimony and Dr. Patterson's evaluation.  Dr. Green testified that an IQ test score of 76 does not meet or equal the severity of any relevant listings. Claimant cites SSR 82-55 in claiming that her deficiency is "severe," however, SSR 82-55 simply gives as an example of a *non*-severe impairment an individual with an IQ of 80 or higher.  Both Dr. Green and Dr. Patterson agreed that due to County's mental impairment and lack of general knowledge, County's ability to function independently and maintain concentration is limited, but not severe enough to meet or equal the severity of any listings.  In his evaluation, the ALJ mentioned all these factors, as well as the fact that County is not under any mental treatment.  Thus, the Court concludes the ALJ properly acknowledged and evaluated County's cognitive impairment.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is GRANTED, and County's motion is DENIED.  The Court shall enter a final judgment on even date herewith.

Signed this 21st day of July, 2005.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE